## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

VICTORIA ELAINE PICKENS, )
                          )
          Plaintiff,      )
v.                        )          Case No.   CIV-12-369-SPS
                          )
CAROLYN W. COLVIN,        )
Acting Commissioner of the Social  )
Security Administration,[1]   )
                          )
          Defendant.      )

### OPINION AND ORDER

The claimant Victoria Elaine Pickens requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled.  As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security.  In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on May 2, 1984, and was twenty-seven years old at the time of the second administrative hearing (Tr. 53). The claimant attended special education classes throughout school and graduated but has no past relevant work (Tr. 342). The claimant alleges that she has been unable to work since April 1, 2004 because of hearing problems (Tr. 93).

### Procedural History

The claimant applied on April 22, 2004 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-405, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Ralph Wampler determined the claimant was not disabled in a written opinion dated October 27, 2006, but this Court reversed the Commissioner's decision on appeal in Case No. CIV-07-225-RAW-KEW and remanded the case for further proceedings. ALJ Douglas S. Stults held another administrative hearing and concluded that the claimant was not disabled in a written opinion dated May 8, 2012 (Tr. 327-34). The Appeals Council denied review, so the written opinion dated May 8, 2012

is the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981; 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  The ALJ determined that the claimant's severe impairments consisted of bilateral sensorineural hearing loss; borderline intellectual functioning, expressive language disorder, and cannabis abuse (Tr. 330).  He further found that claimant had the RFC to perform work at all exertional levels, but had the following nonexertional limitations: i) must avoid exposure to workplace hazards; ii) must wear hearing protection in any work environment classified as "loud"'; iii) verbal communication must be face-to-face and in a quiet environment; iv) training or instruction should be conducted by demonstration; v) claimant can understand, remember, and carry out only simple instructions and make simple work related decisions; vi) claimant can only handle occasional changes in work processes and environment; vii) no communication with the general public; viii) contact with coworkers and supervisors should be on a superficial basis only; ix) claimant cannot be expected to read over a 3rd grade level; x) claimant cannot maintain very strict production or performance quotas; and xi) claimant may have up to a 5% reduction in production from that of an "average" employee (Tr. 337).  While the claimant has no past relevant work, the ALJ found that there was work in the national economy that she was capable of performing, *i. e.*, floor cleaner, shirt presser, and photocopy machine operator. (Tr. 343).  Thus, the ALJ found that the claimant was not disabled (Tr. 343-44).

-4-

## Review

The claimant contends that the ALJ erred by: i) finding that the claimant did not satisfy the criteria of Listing 12.05C ; ii) engaging in improper picking and choosing among the evidence when formulating the claimant's RFC; and iii) failing to explain the finding that the claimant has only a 5% reduction in production, *i. e.*, engaging in "results-oriented jurisprudence."   The undersigned finds merit in the claimant's first contention.

The claimant attended special education classes at Plainview Public Schools, and the record reflects that she was held back in the first grade (Tr. 211).  The claimant was noted to be below grade level in reading and spelling, but she was also noted to work hard and stay on task (Tr. 211).  While the claimant was in second grade, she was noted to fail tests and quizzes, perform at a low ability level, and fail to follow written directions, and it was noted that "[e]ven with modifications of regular class curriculum [the claimant was] unable to achieve successfully" (Tr. 204-05).  In addition, the IEP states that the claimant was in special education because she met "the eligibility criteria for special education programming for the educable mentally handicapped" (Tr. 200).  By the time the claimant reached the fifth grade, she was still unable to complete regular classroom work despite having peer tutoring, small group work, and preferential seating (Tr. 187).  During routine IEP reviews, team members consistently noted that the claimant would be unable to pursue her education in regular classes without help "due to low academic scores and low grades" (Tr. 148, 155, 165, 172), and in the tenth grade, it

was noted that the claimant was unable to attend regular class full time due to her disability, and that individual and extra help were attempted but failed to work (Tr. 134). Thus, the regular classes that the claimant was permitted to attend were conducted with modifications for the claimant (Tr. 133, 136, 138, 141, 154, 164, 171). The claimant's IEP team members also found that the claimant had the disability of mental retardation after an appropriate evaluation (Tr. 159). During high school, the claimant was consistently found to read, spell, and perform math significantly below grade level (Tr. 114, 120, 130, 138), with her final testing in eleventh grade revealing that she was reading and spelling at a third grade level and performing arithmetic at an early fifth grade level (Tr. 114). While the claimant's IEP team attempted to immerse her in more regular classes, the record reveals that the claimant was placed back into more special education classes as her time in high school proceeded (Tr. 126, 128). By the time the claimant was a senior in high school, she was back to spending five of seven hours outside of regular education classes (Tr. 123)

The claimant was evaluated by state consultative examiner Dr. M. Gerald Ball, Ph. D. on July 26, 2007 (Tr. 180-181). During this appointment, Dr. Ball administered the Wechsler Adult Intelligence Scale-III (WAIS-3) and the reading section of the Wide Range Achievement Test-III (WRAT-3). The results of the WAIS-3 indicated that claimant had a verbal IQ of 70, a performance IQ of 64, and a full scale IQ of 65, and said results placed her in the range of mild mental retardation (Tr. 181). Further, the claimant was assessed to read at a third-grade level, which Dr. Ball found consistent with

her IQ results, and he noted that claimant's test results suggested that though claimant attended two years of college, he had questions about her success while attending (Tr. 181).  Dr. Ball's diagnosed claimant with panic disorder without agoraphobia and mild mental retardation, and assigned to claimant a GAF score of 48 (Tr. 181).

State reviewing physician Dr. Ron Smallwood completed a Psychiatric Review Technique and corresponding Mental Residual Functional Capacity Assessment (Tr. 185-201).   Dr. Smallwood found that claimant's mental retardation and anxiety disorder caused her to experience moderate limitations in the areas of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 199).  Further, Dr. Smallwood noted in the Mental RFC Assessment that claimant was markedly limited in the following areas: i) ability to understand and remember detailed instructions; ii) ability to carry out detailed instructions; and iii) ability to interact appropriately with the general public (Tr. 186).

Although the claimant bears the burden of proof at step three to establish that she meets or equals the requirements for a listed impairment, *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity."   *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) [quotation omitted].  *Clifton* requires the ALJ to discuss the evidence and explain why

-7-

claimant was not disabled at step three.  *Id.* at 1009, *citing Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986).

In order to satisfy section 12.05C, the claimant must first satisfy the diagnostic description included in the introductory paragraph which requires that the claimant possess "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i. e.*, the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05.  This initial requirement is referred to as the "capsule definition."  *Peck v. Barnhart*, 214 Fed. Appx. 730, 736 (10th Cir.) [unpublished opinion].  In addition to satisfying the capsule definition of mental retardation, the claimant must also satisfy two additional prongs in order to meet the requirements of Listing 12.05C:  "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" 20 C.F.R. pt. 404, subpt. P, app. 1.

At step three of the sequential evaluation, the ALJ determined that the claimant's severe impairment of mental retardation did not meet section 12.05 of the Listing of Impairments because she "has demonstrated significant adaptive functioning" (Tr. 336). Thus, the ALJ's finding rests on the claimant's failure to satisfy the capsule definition. The ALJ cites several reasons for finding that the claimant demonstrated significant adaptive functioning: i) school records showing that the claimant exhibited average skills in her activities of daily living, good social functioning, and above average adaptive

behavior; ii) school records showing that the claimant "needed to be around others in the regular classroom setting at least part of the school day"; iii) the claimant graduated from high school with a diploma; and iv) the claimant's activities of daily living were adequate, *i. e.*, she could take care of personal grooming, cook, shop for food, read, write, count change, and care for her children (Tr. 337).

The problem with the ALJ's analysis in this regard is two-fold. First, the ALJ mischaracterized much of the evidence related to the claimant's functional abilities. For instance, the ALJ cited the claimant's placement in regular classes as an indication that her adaptive functioning was adequate, but the ALJ ignored that the claimant was placed in regular classes to prevent the claimant from developing low self esteem (Tr. 148), that assignments would be "modified when needed" while in regular classes, *i. e.*, modified testing procedures, adjusted grading scales, shortened assignments and availability of one on one assistance at all time (Tr. 133), and that individual and extra help to the claimant while in school failed to work and services were required for the claimant (Tr. 134). An ALJ is not entitled to engage in picking and choosing among evidence, which is precisely what happened in this case. *Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) ("'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982).

Moreover, in finding that the claimant demonstrated adequate adaptive functioning at step three, the ALJ failed to follow the Social Security Agency's directive related to assessing "deficits in adaptive functioning." "[T]here are at least four possible

-9-

definitions of 'deficits in adaptive functioning' – from the four major professional organizations dealing with mental retardation." *Barnes v. Barnhart*, 116 Fed. Appx. 934, 942 (10th Cir. 2004), citing 67 Fed. Reg. 20018-01, 20022, 2002 WL 661740 (Apr. 24, 2002) ("The definition of [mental retardation] used by SSA in the listings is not restricted to diagnostic uses alone, nor does it seek to endorse the methodology of one professional organization over another. . . . SSA's definition establishes the necessary elements, while allowing use of any of the measurement methods recognized and endorsed by the professional organizations.").  In this case, however, the ALJ seems to have concocted his own definition for "deficits in adaptive functioning," which is error.  On remand, the ALJ should "choose a standard consistent with the Commissioner's directive" at 67 Fed. Reg. 20018-01, analyze the evidence in accordance with the standard chosen, and consider whether that evidence supports a finding that the claimant has exhibited the requisite "deficits in adaptive functioning" as set out in the capsule definition accompanying Listing 12.05C.  *See Barnes*, 116 Fed. Appx. at 942-943.

Because the ALJ's findings at step three with regard to Listing 12.05C are not supported by substantial evidence, the decision of the Commissioner is REVERSED and the case REMANDED to the ALJ for further analysis as outlined above.

### Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 6th day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma